No. 2432.

ISAAC GRAY *v*. THE STATE.

1. PRACTICE—WITNESS —It is expressly provided by statute that "persons charged as principals, accomplices or accessaries. whether in the same indictment or different indictments, can not be introduced as witnesses for one another."
2. SAME—THEFT—RECEIVING STOLEN PROPERTY, KNOWING IT TO BE STOLEN is, under the law of this State, a separate and distinct offense from theft, and a party indicted for theft can not, under that indictment, be convicted of receiving stolen property, knowing it to be stolen.

3. SAME—ACCESSARY.—Subdivision 2 of article 87 of the Penal Code pro·
vides that "relations in the ascending or descending line by consanguin-
ity or affinity can not be accessaries."                    o
4. SAME—EVIDENCE—CASE STATED.—On his trial for theft of lost property,
. the defendant offered one Nancy Gray as a witness in his behalf.  The
State objected to the competency of the proposed witness upon the
ground that a separate indictment was pending against her, wherein she
was charged with receiving and concealing the stolen property for the
theft of which the defendant was on trial.  The objection was sustained
by the trial court.  The evidence disclosed that the proposed witness
was the mother of the defendant.  In view of the rules above announced,
it is *held* that, inasmuch as the witness was not charged as a principal,
accomplice or accessary in the *theft*, she was a competent witness, and
the trial court erred in holding her incompetent.

APPEAL from the District Court of Brazos.  Tried below be-
fore the Hon. John N. Henderson.

The conviction in this case was for the felonious theft of money,
and the penalty assessed against the appellant was a term of two
years in the penitentiary.

Otto Oldham was the first witness for the State.  He testified
that he lived in Burleson county, Texas.  On or about December
20, 1886, he went to the town of Bryan, in Brazos county, taking
with him four bales of cotton, which he sold.  The money he re-
ceived for the cotton he placed in his pocket book, and he placed
his pocket book in the side pocket of his coat.  He did this, he
thought, in Mr. Koppe's store.  The money, together with some
his brother gave him to take home, amounted to one hundred
and thirty dollars in United States currency, the bills being of
the denominations of five, ten and twenty dollars.  Having
placed his pocket book and money in his pocket, the witness got
on his horse at Koppe's store and started home.  When he had
traveled a mile or a mile and a half on his way home, the witness
missed his pocket book and money, and went back to town to
look for it.  He inquired for it at Koppe's store, and, aided by
others, looked for it about those premises.  Failing to find his
property at Koppe's, he went to Garth's gin and warehouse
where he thought he might have dropped it, but he failed to find
it at either of those places.  Witness then went home, and re-
turned to Bryan on the next day, when he reported his loss to
City Marshal Carr and Policeman Bishop, who, during the course
of the day, returned to the witness ninety dollars in United
States bills of denominations corresponding with some of those

lost by witness. Those bills looked like some of the bills lost by witness, but witness could not positively identify them as the same. The money returned to the witness by the police officers was taken by them from the defendant. Policeman Bishop was the officer who returned the ninety dollars to witness. Witness could neither read nor write, but could tell the value of a United States currency bill by the figures on the same.

Cliff Harris testified, for the State, that he lived in the town of Bryan, and was a clerk in Mr. Koppe's store. He knew Otto Oldham, who, on or about December 15, 1886, in Koppe's store, showed him some United States currency notes or bills. Witness saw Oldham put that money in his pocket book, and, according to his recollection, Oldham then placed the pocket book in the right hand side pocket of his coat. About an hour after he left the store he, Oldham, returned and said that he had lost his pocket book and money. Witness helped Oldham hunt for the money about the store, but they failed to find it, and Oldham left. He returned the next morning, and witness advised him to consult the police about his loss. The defendant, on the day of Oldham's loss, was working about Koppe's store. Shortly after Oldham left, after returning to the store and reporting his loss, the defendant left, going out at the back door. Witness told the porter to call him back, which the porter did, but defendant did not stop, nor did he ever come back to get his pay.

A. B. Carr, city marshal of Bryan, in December, 1886, testified, for the State, that some time during that month the prosecuting witness, Oldham, reported to him that he had lost a pocket book containing some money. Witness then learned that the defendant was seen to have a five dollar bill on the evening before, and he sent Policeman Bishop after him. Bishop brought the defendant to witness, and witness had a talk with him about Oldham's money. Witness thought that defendant admitted that he found some money on the evening before. Witness told defendant that he had better go and get the money, and that he thought it would be all right if he would produce the money. Defendant and Bishop then went off and soon returned together, bringing ninety dollars in United States currency. Defendant then told witness that he had spent a part of the money he found. The sum he claimed to have spent, added to the ninety dollars he returned, amounted to within eight or ten dollars of the amount Oldham claimed to have lost. Witness was not sure

that defendant claimed to have found the money, but such was his impression.

J. M. Bishop testified, for the State, that, in December, 1886, he was a member of the police force of the town of Bryan. During that month he was called upon to assist Mr. Oldham in his search for his lost pocket book and money. Witness took the defendant to Marshal Carr, and, after Carr's interview with defendant, he took defendant to the house of his mother, one Nancy Gray. Nancy was not at home, but was soon found at the house of a neighbor. Before Nancy was called, the defendant looked in a trunk, but failed to find the money. Nancy was then brought to the house, and defendant told her to get the money he had given her. Thereupon Nancy thrust her hand into a pocket in her underskirt and produced ninety dollars, which she handed to witness. The witness after counting the money asked the defendant where the pocket book and papers were. Defendant made no reply to this question, but his mother, the said Nancy, replied either that she had burned them or that she had advised the defendant to burn them, witness could not remember which. Defendant at that time was not in arrest, but had accompanied the witness to Nancy's house of his own free will and accord. Defendant surrendered the ninety dollars willingly, and told witness that he found it on one of the streets of Bryan.

The State rested.

Frank Ellis was the first witness for the defense. He testified that, on the day Oldham was said to have lost his money, he, witness, was at work at Koppe's store. Witness saw the finding of the money by the defendant, at the back of Koppe's store. He saw the defendant stoop, pick up something, and then cross the ditch which was at the rear of said store. Witness then asked him what he had found. Defendant made no attempt at concealment, but replied at once that he had found some money. The witness at that time was stacking oats at the rear of Koppe's store, about ten feet distant from the building. He did not see the object picked up by defendant, and could not say that it was or was not a pocket book. This was on Friday. Witness said nothing to Mr. Harris about seeing the defendant find the money, though he saw Harris and Oldham hunting for lost money. Witness saw Oldham before defendant found the money. Oldham passed out of the back door of Koppe's store, crossed the ditch about where the defendant afterward found the money,

mounted his horse and started home.   He appeared to be drunk. Defendant was at that time working about Koppe's store, and was in as good a position as the witness to see Oldham when he left Koppe's store, crossed the ditch, mounted his horse and rode off.

Jerry Simpson testified, for the defense, that defendant was not hired to work at Koppe's store on the day that Oldham lost his money.   Witness was at the said store on that day, and was there when Oldham came back and looked for his money.   Frank Ellis helped him look for it.

The defense closed.

The motion for new trial raised the question discussed in the opinion.

*J. A. Buckholts*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   Appellant was charged, tried and convicted in the lower court for the theft of money over the value of twenty dollars, the property of one Otto Oldham.   As made by the evidence the case was one of theft of property which had been lost by the owner.

There is but one bill of exceptions in the record.   Defendant proposed to introduce as a witness in his behalf one Nancy Gray, to whose competency the district attorney objected because the said witness was indicted in the district court and was being prosecuted for receiving and concealing the same money stolen by defendant and for which he was on trial, knowing it to have been stolen; and in support of the objection produced the indictment.   The court sustained the objection and excluded the witness.

Our statute expressly provides that "persons charged as principals, accomplices or accessaries, whether in the same indictment or different indictments, can not be introduced as witnesses for one another."   (Code Crim. Proc., art. 731.)   Under repeated decisions of this court, receiving stolen property knowing it to be stolen is a separate, distinct and substantive offense from theft, and a party under an indictment for theft can not be prosecuted and convicted for receiving stolen property knowing it to have been stolen.   (Penal Code, art. 743; Brown v. The State, 15 Texas Ct. App., 531; Gaither v. The State, 21 Texas Ct. App., 527.)

There is no claim that Nancy Gray was a principal or an accomplice in the theft. (Penal Code, arts. 74 and 79.) She was defendant's mother, as shown by the evidence, and, though the crime with which she was charged would come near to bring her within our statutory definition of an accessary (Penal Code, art. 86), she was not and could not be an accessary in the crime on account of the fact that she was defendant's mother. It is expressly declared by statute, that "relations in the ascending or decending line by consanguinity or affinity can not be accessaries." (Penal Code, art. 81, sub div. 2.)

If she was not charged as a principal, accomplice or accessary in the theft, then she was a competent witness. We think it clear that she was not so charged, and that the court erred in holding her incompetent.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*